THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES THOMAS MAHONEY, Defendant-Appellant.

(No. 11881;

Fourth District—April 10, 1974.

CRAVEN, J., dissenting.

John F. McNichols, Deputy Defender, of Springfield, (J. Daniel Stewart, Assistant Appellate Defender, of counsel), for appellant.

Basil G. Greanias, State's Attorney, of Decatur (Patrick M. Walsh, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

Defendant pleaded guilty to the offense of indecent liberties with a child in violation of Ill. Rev. Stat. 1969, ch. 38, par. 11—4. Sentence of 4 to 8 years was imposed.

Upon appeal it is urged that the conviction must be reversed because the indictment did not allege the name of the injured party or, in the alternative, that "the order denying probation be reversed and he be granted probation". The challenged allegation of the indictment is in the language:

"[K]nowingly and lewdly fondled and touched the vaginal area of a female child under the age of 16 years, to-wit: one year of age, whose name will be revealed at a trial of this cause, he doing said act with the intent to arouse and satisfy his sexual desire."

The guilty plea was negotiated by defendant, his counsel and the State's Attorney and was tendered to the court upon the case being called for trial. There was no motion to quash the indictment. The record shows that prior to such tender of plea, counsel had moved for and obtained the items of discovery provided in Supreme Court Rule 412. Upon counsel's motion, psychiatric examination was ordered to ascertain his competence to stand trial. The psychiatrist's examination

found defendant to be without delusions, correctly oriented with no history of mental illness and of average intelligence. The defendant waived jury trial on the issue and the court entered an order finding defendant competent to stand trial.

In *People v. Walker*, 7 Ill.2d 158, 130 N.E.2d 182, it was said:

> "Where an indictment charges an offense either against persons or property, the name of the person or property injured, if known, must be stated, and the allegation must be proved as alleged. * * * The purpose served by alleging the name of the person or property injured is to enable the accused to plead either a former acquittal or conviction under the indictment in the event of a second prosecution for the same offense. * * * Since the requirement is founded upon the protection of the right of the accused against double jeopardy, it is a substantial requirement designed to safeguard a constitutional right and not a mere technical rule." 7 Ill.2d at 161.

Succeeding opinions have stated that the essential function of such allegation is to permit the defendant to prepare his defense and to prevent surprise at trial, and to establish such a record as would permit him to plead a conviction or an acquittal in bar of a subsequent prosecution. (*People v. Nelson*, 17 Ill.2d 509, 162 N.E.2d 390; *People v. Johnson*, 20 Ill.2d 336, 169 N.E.2d 776; *People v. Harden*, 42 Ill.2d 301, 247 N.E.2d 404, and *People v. Jones*, 53 Ill.2d 460, 292 N.E.2d 361.) In each of these cases the court analyzed the allegation and the facts of record in terms of the function served by the Rule, and the court determined the issues in the light of whether defendant was, in fact, unable to prepare his defense or was unable to plead in bar of subsequent prosecution.

Defendant urges that the case is controlled by the opinion in *People ex rel. Ledford v. Brantley*, 46 Ill.2d 419, 263 N.E.2d 27. There defendant entered a plea of guilty to burglary. The language of the indictment was ambiguous in terms of ownership of the dwelling. Such plea was entered in 1969 prior to the effective date of Supreme Court Rule 412 (October 1, 1971), providing extensive discovery, and the effective date of Supreme Court Rule 402, requiring that the record show a factual basis for the plea (September 1970).

Without reference to an indictment's function of supplying information for a preparation for trial or establishing facts of record to support a plea in bar which are discussed in *Walker* and *Harden*, the court held the indictment void upon the authority of *People v. Picard*, 284 Ill. 588, 120 N.E. 546. There was no reference to the function of an indictment in the context of procedural access to facts which permitted defendant

to prepare his defense, or a record which would support a plea in bar as discussed in *Walker.*

Since *Ledford* some appellate opinions have followed strictly the requirements that the person or property affected by the offense be identified in the indictment. (*People v. Wolf,* 7 Ill.App.3d 739, 288 N.E.2d 688; *People v. Allsop,* 6 Ill.App.3d 688, 286 N.E.2d 387, *People v. Moyer,* 1 Ill.App.3d 245, 273 N.E.2d 210.) Other appellate opinions have reviewed the matters of record to ascertain whether or not the accused was, in fact, misled in any way in the preparation of his defense. *People v. Springs,* 2 Ill.App.3d 817, 277 N.E.2d 764; *People v. Viar,* 131 Ill.App. 2d 983, 268 N.E.2d 872; *People v. Cicchetti,* 2 Ill.App.3d 535, 275 N.E.2d 661; *People v. Kaprelian,* 6 Ill.App.3d 1066, 286 N.E.2d 613; *People v. Palmer,* 4 Ill.App.3d 309, 280 N.E.2d 754.

In *People v. Jones,* 53 Ill.2d 460, 292 N.E.2d 361, the indictment named Charles Mundy as the victim of armed robbery. Upon the date of trial, the court permitted amendment of the indictment to show the ·name of the victim as Delbert Mundy, a different individual. The court affirmed the trial court's allowance of the amendment as a formal defect within the ambit of Ill. Rev. Stat. 1969, ch. 38, par. 111—5. The court said:

> "The liberation of criminal pleading also reflects a lessening in importance of the indictment's secondary functions. The indictment as a means of informing defendants of particulars concerning the case is now far overshadowed by the array of discovery procedures available to the defense. Similarly, the time when an indictment defined the limits of jeopardy has passed and a prior prosecution on the same facts may be proved by resort to the record. (See, *e.g., People v. Jankowski* (1945), 391 Ill. 298, 302, 63 N.E.2d 362.) The primary safeguard of indictment by grand jury, which remains secured to criminal defendants, is to protect individuals from the caprice of the public prosecutor." (53 Ill.2d 464.)

The court continued to say:

> "We believe that this constitutionally required protection has been afforded this defendant and that the particular facts in this case demonstrate the amendment of the victim's first name to be a mere formality. Where, as here, no hint of surprise or prejudice to the defendant is shown, allowance of such an amendment is not error." (53 Ill.2d at 465.)

Upon such considerations the court said:

> "A holding that the identity of an armed-robbery victim is an essential allegation of an indictment charging that offense is, how-

ever, not dispositive of the issue of whether the misstatement of identity is a formal or substantial defect." 53 Ill.2d at 463.

The omission of the name of the infant victim in the indictment does not suggest a withholding of her identity but seems to be rather a form of the practice of withholding the name of any minor associated with an offense. (Ill. Rev. Stat. 1969, ch. 37, par. 702—8(3).) The use of such procedure here does not bring any assertion that defendant was misled in preparing his defense, that he was taken by surprise or that he has, in fact, suffered any prejudice. (*People v. Nelson,* 17 Ill.2d 509, 162 N.E.2d 390; *People v. Jones,* 53 Ill.2d 460, 292 N.E.2d 361.) There were no such claims either in the trial court or upon appeal.

As a factual basis for the plea, the State's Attorney stated in the record matters to which witnesses would testify, including the fact that the victim was defendant's stepdaughter, that defendant and his wife took the child to the hospital where examination disclosed substantial injury and made reference to the medical findings. He further stated that defendant made admissions to police officers and welfare workers that he had performed the acts. The State's Attorney also noted that defendant claimed an alibi defense. Defendant's counsel did not controvert the statement of facts but supplemented it with reference to the domestic problems of defendant and his wife. Thereupon, the court questioned defendant who said that he had not been coerced by counsel's refusal of services if defendant went to trial, and that he, the defendant, had no complaints concerning counsel's assistance. Defendant answered affirmatively the court's question whether he was pleading guilty because he was guilty in fact.

■■ Within the terms of the secondary functions of an indictment, it cannot be said that defendant has such want of knowledge of the identity of the victim that there was prejudice in preparation of his defense. The record of the factual basis of the plea furnishes ample record of this prosecution for purposes of supporting a plea in bar of a subsequent prosecution. (*People v. Jankowski,* 391 Ill. 298, 63 N.E.2d 362; *People v. White,* 130 Ill.App.2d 775, 267 N.E.2d 129.) Defendant, in fact, has had the constitutionally required protection described in *People v. Walker,* 7 Ill.2d 158, 130 N.E.2d 182, and the omission of the infant's name is properly deemed a formal defect, rather than a substantial defect. See *People v. Stanley,* 4 Ill.App.3d 23, 280 N.E.2d 14.

Defendant argues that the court acted in an arbitrary · manner in denying defendant's petition for probation, and that this court should reverse such denial and grant probation.

In *People ex rel. Ward v. Moran,* 54 Ill.2d 552, 301 N.E.2d 300, the appellate court vacated the sentence imposed and directed the trial

court to grant probation. The supreme court concluded that Supreme Court Rule 615 was not intended to grant authority to a court of review to reduce a penitentiary sentence to probation, but that the authority conferred by the rule was to determine whether the trial court exercised discretion or acted arbitrarily in denying probation.

The investigating probation officer recommended denial of probation. The record of the probation hearing discloses that defendant's counsel did not controvert any of the matters in the report except in one minor aspect. The report included the statement of witnesses concerning prior physical abuse of the child by the defendant.

■■ Defendant called certain witnesses at the probation hearing. One had had no more than a passing acquaintance with defendant until about a week before the offense. Two witnesses had not seen defendant since his marriage when the child was brought into his home. Certain witnesses testified to a brief that defendant could abide the rules of probation, but the record does not show that they were informed as to what the rules were. The trial court observed defendant throughout several court appearances. In denying probation, it was noted that the assault was upon a particularly helpless victim, and the trial court concluded that probation would not protect society and that rehabilitation required more than that which could be provided through probation. Upon the record, we cannot conclude that the court failed to exercise judicial discretion, or that he acted arbitrarily.

Counsel have submitted supplemental briefs upon the question of the necessity that the court appoint two psychiatrists to examine defendant prior to proceeding as is provided in Ill. Rev. Stat. 1969, ch. 23, pars. 2401 and 2402.[1]

These provisions were adopted in 1957 and added as paragraphs 825f and 825g, to the statute regarding sexually dangerous persons. (Ill. Rev. Stat. 1957, ch. 38, pars. 820.01—825g.) Upon the adoption of the Criminal Code in 1963, these paragraphs were not placed in such Code. The Committee Comments note that such paragraphs were treated as ancillary to "offenses against children" and so were not placed in the

---

[1] "2401. In all cases in which a person of the age of 17 years and upwards is charged with any violation of a statute or ordinance, the basis of the charge being a sexual crime against a child under the age of 13 years, the trial of such charge shall be in a circuit court.

2402. The judge of the court in which an indictment or information under Section 1 of the Act[1] is tried shall, before trial, require a psychiatric examination of the person charged. The examination shall be by two psychiatrists appointed by the court, who shall make a personal examination of the person charged and shall file with the court a report in writing of the result of their examination, a copy of which shall be delivered to the person charged."

Criminal Code. S.H.A. (1970), ch. 38, art. 105, p. 123, Committee Comment.

In the present statutory context there is no stated purpose in psychiatric examination. Presumably, it would show the presence or absence of mental disorder. This is in contrast to the language of the Sexually Dangerous Persons Act, which directs psychiatric examination:

"[T]o ascertain whether such person is sexually dangerous * * *."

In the proceedings under the Sexually Dangerous Persons Act, there is provision for jury trial upon the issues arising under the petition (par. 105—5), and for custodial guardianship with the Director of Corrections if defendant is found to be sexually dangerous (par. 105—8). In contrast, there is no provision in chapter 23, paragraphs 2401 and 2402, which provide for a hearing upon the findings of the psychiatric examination or for disposition after the psychiatric report is filed.

The courts have examined such statutes as enacted prior to the present provisions of the Criminal Code and have determined that such were enacted for the purpose of preventing persons suffering from a mental disorder, although neither insane or feebleminded, from being punished for crimes they commit during a period of mental disability. (*People v. Sims*, 382 Ill. 472, 47 N.E.2d 703; *People v. Kennedy*, 43 Ill.2d 200, 251 N.E.2d 209.) The sole purpose of the statute was to ascertain a mental state. (*People v. Redlich*, 402 Ill. 270, 83 N.E.2d 736.) The purpose was to ascertain whether the accused's mental state was such as to require that he plead to an indictment and be placed on trial. *People v. Capoldi*, 10 Ill.2d 261, 139 N.E.2d 776; *People v. McDonald*, 44 Ill.App.2d 348, 194 N.E.2d 541.

Here, there is no contention that defendant was not competent to stand trial, to enter a plea or to commit the offense. (See *People v. Hedenberg*, 9 Ill.App.3d 597, 291 N.E.2d 848.) The examination and hearing pursuant to Ill. Rev. Stat. 1969, ch. 38, pars. 104.1 and 104.2, bring uncontroverted psychiatric evidence that defendant was competent to plead to the indictment under the tests of *People v. Sims*, 382 Ill. 472, 47 N.E.2d 703; *People v. Redlich*, 402 Ill. 270, 83 N.E.2d 736, and *People v. Capoldi*, 10 Ill.2d 261, 139 N.E.2d 776. Defendant's citation of *People v. Allen*, 7 Ill.App.3d 249, 287 N.E.2d 171, brings little persuasion since in that case the uncontradicted psychiatric evidence was that defendant was incompetent to stand trial.

The Criminal Code of 1961 defined "responsibility" in broader terms than the former definition of insanity. Ill. Rev. Stat. 1969, ch. 38, par. 6—2, provides:

"(a) A person is not criminally responsible for conduct if at

the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

■■ By reason of such definition there is now a means of presenting the issue of whether a defendant who was neither insane nor feeble-minded under the former standards of insanity was suffering from a mental disorder should be punished for crimes committed during a period of mental instability. Once there is some evidence which raises a doubt as to defendant's sanity and responsibility under the statute at the time of the alleged prosecution must prove his responsibility beyond a reasonable doubt. (*People v. Hawkins*, 53 Ill.2d 181, 290 N.E.2d 231; *People v. Smothers*, 55 Ill.2d 172, 302 N.E.2d 326.

■■ The issue of defendant's responsibility as insanity as now defined was not raised in the trial court or initially presented in the briefs on appeal. The record does not suggest any prior mental illness or conduct which indicates that defendant was one who should not be required to stand trial upon the charges. Thus, the record does not reflect a defect affecting substantial rights which should be noticed, although not brought to the attention of the trial court under the provisions of Supreme Court Rule 615(a).

■■ We find that this record contains many *pro se* documents which would be properly treated as seeking post-conviction relief and for appointment of counsel. A docket entry states that such "Pleadings (are) to be considered with appeal now recently filed and pending". A subsequent docket entry notes, "Whereas cause on appeal with Illinois Defender Project counsel, these *pro se* filings referred to him for consideration".

Supreme Court Rule 615(a) provides for an appeal of a final judgment of the circuit court in any post-conviction hearing. So far as the record discloses, there has been no compliance with any of the provisions with article 122 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, pars. 122—1 through 122—7), providing for appointment of counsel and proceeding to disposition upon the petition. Such petition continues to pend in the circuit court. The trial court had no authority under any statute or rule to order the consolidation of the undisposed post-conviction petition, or to direct that it be heard with the pending appeal.

The judgment of conviction which is appealed is affirmed.

Affirmed.

SIMKINS, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

It is expressly required by the statutory provisions cited in the majority opinion that one charged with a sexual crime against a child under the age of 13 years shall, by action of the judge of the trial court, be required to undergo a psychiatric examination. The examination shall be by two psychiatrists appointed by the court for that purpose and a report in writing of the result of their examination is to be delivered to the person charged. The majority opinion concludes that noncompliance with that statutory provision, while error, is harmless. The majority then proceeds to equate the examination there required with the issue of competency. Its conclusion that the failure to have the examination is harmless error is based upon a determination that the defendant was otherwise determined to be competent. In this case, and in *People v. Newbern* 16 Ill.App.3d 1037, 307 N.E.2d 439, the court seems to conclude that the legislative requirement for psychiatric examination is misplaced statutorily or without legislative focus. I do not agree.

First, it seems to me that the examination is required under the holding in *People v. Flowers*, 51 Ill.2d 25, 281 N.E.2d 299; under our holding in *People v. Allen*, 7 Ill.App.3d 249, 287 N.E.2d 171; and inferentially in the opinion in *People v. Hedenberg*, 9 Ill.App.3d 597, 291 N.E.2d 848. The purpose is not to ascertain the defendant's competency but rather to ascertain and to give the prosecuting attorney behavioral science information so as to enable the prosecutor to make an informed judgment as to whether he should proceed by criminal prosecution for the offense or civil commitment under the provisions of the Sexually Dangerous Persons Act. A defendant can be incompetent to stand trial and still subject to classification as a sexually dangerous person, and conversely, a defendant can be competent to stand trial and yet still be subject to commitment civilly for treatment as a sexually dangerous person in lieu of criminal proceedings.