THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALTHEA JOHNSON, Defendant-Appellant.

(No. 60740;

First District (3rd Division)—November 6, 1975.

Sam Adam, Edward M. Genson, and Theodore M. Becker, all of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendant, Althea Johnson, was charged in a complaint with the offense of prostitution by agreeing to perform an act of deviate sexual conduct for money in violation of Ill. Rev. Stat. 1973, ch. 38, par. 11—14 (a)(2). After a trial without a jury she was found guilty and sentenced to serve 8 days in the Cook County House of Correction. Defendant appeals, contending that

(1) Ill. Rev. Stat. 1973, ch. 38, par. 11—14, is unconstitutional either on its face or as applied in the instant prosecution;

(2) she was not proved guilty beyond a reasonable doubt;

(3) the trial court erred in denying her motion for a new trial; and

(4) a fatal variance existed between the charge in the complaint and the proofs adduced at trial.

We agree with defendant's final contention as to a fatal variance. Inasmuch as we therefore reverse, only those facts relevant to such issues are presented.

In the complaint Andrew Murcia, an investigator with the Vice Division of the Chicago Police Department, charged in pertinent part that on August 11, 1973, at 1300 North Clark Street, Chicago, in violation of chapter 38, section 11—14(a)(2) of the Illinois Revised Statutes, defendant "committed the offense of Prostitution (Deviate Sexual Conduct) in that she agreed to perform an act of deviate sexual conduct, Namely Oral Copulation with Andrew Murcia, for the sum of $50.00 U.S.C."

At trial, Andrew Murcia was the only witness for the State; he testified that at approximately 7 P.M. on August 11, 1973, he was approached by defendant as he was leaving his private car at 1300 North Clark Street. He was not then on duty but was on his way to the Ambassador East Hotel where he is employed as a part-time security officer. Defendant asked him if his name was Mort Levy and he told her it was. She asked him if he remembered her and he said that she looked familiar. She then asked if he was busy and when he said he was not, she told him that if he wanted, she would give him a "french" for $50. Murcia testified that in his opinion the term "french" is street slang for oral copulation. He

stated that because he was alone he declined defendant's offer. Later he saw her enter a car being driven by a man, and he followed the vehicle in his own car to the vicinity of 3153 North Boardway, where he requested uniformed officers in a squad car to stop the car in which defendant and her companion were riding. The two were then placed under arrest and taken to police headquarters.

On cross-examination, Officer Murcia testified that he told defendant his name was Mort Levy because he wanted to go along with her, having some idea of what she had in mind. He stated that he declined her offer and did not arrest her at the initial meeting because it is not considered good police policy for one officer to arrest a woman. At the conclusion of Murcia's testimony, the State rested.

Defendant and her companion, William Kraus, testified that they had left defendant's apartment and were driving to a restaurant in the vicinity of the arrest. Defendant was employed by a company Kraus owned. She denied ever having seen Murcia prior to her arrest, and denied offering to "french" him for $50. The trial court found defendant guilty and sentenced her to serve 8 days in the House of Correction.

Ill. Rev. Stat. 1973, ch. 38, par. 11—14, under which defendant was charged, provides: "(a) Any person who performs, offers or agrees to perform any of the following acts for money commits an act of prostitution: (1) Any act of sexual intercourse; or (2) Any act of deviate sexual conduct." Defendant contends that a fatal variance resulted between the complaint, which charged that she agreed to perform an act of deviate sexual conduct, and the trial testimony of Andrew Murcia, which indicated that she only made an offer to perform such act. The State argues that at best only a minor variance is involved because the words "offers" and "agrees" as used in the statute are virtually synonymous and interchangeable.

■■ The above-quoted paragraph 11—14 sets forth one offense of prostitution. The offense is committed when any person "performs, offers or agrees to perform" either of the acts proscribed for money. The word "or" in the statute must be accorded significance; whenever this disjunctive is used, the members of the sentence it connects are to be taken separately. (See *People v. Vraniak* (1955), 5 Ill.2d 384, 389, 125 N.E.2d 513, *cert. denied*, 349 U.S. 963, 99 L.Ed. 1285, 75 S.Ct. 895; also *People v. Spencer* (1971), 131 Ill.App.2d 551, 553, 268 N.E.2d 192.) The legislative intention seems clear that the acts are not synonymous or interchangeable. Rather, it was the legislative purpose and intent that the offense defined would be committed in any one of the three ways: (1) performs, (or) (2) offers or (3) agrees to perform any act of sexual intercourse or of deviate sexual conduct for money. This construction

is fully supported by the pertinent portion of the Committee Comments to the statute:

> "Three verbs are employed to describe the actor's relation to the sexual acts described in subsections (a)(1) and (a)(2). The use of the word 'performs' enlarges the statutory law since no section previously in the statutes proscribed the actual performance of the sexual act for money. The verb 'offers' generally incorporates the former prohibitions on 'soliciting' but connotes less urging and invitation on the part of the prostitute. The word 'agrees' was included to cover the situation where the female simply makes it a practice of accepting properly endowed propositions and permits her reputation or availability to do her soliciting for her." S.H.A. ch. 38, par. 11—14.

■■ The employment in the instant statute of disjunctive acts, each constituting an alternative material element of the offense, renders this case analogous to *People v. Priest* (1972), 9 Ill.App.3d 499, 292 N.E.2d 518. There it was held that a fatal variance existed between a charge of unlawful possession of a firearm and a finding of guilty of unlawful possession of ammunition. In so holding, the court stated at pages 502-503:

> "One charged with a specific crime may not be found guilty of another even though the evidence might support such a finding. *Lowell v. People* (1907), 229 Ill. 227, 82 N.E. 226; *People v. Day* (1926), 321 Ill. 552, 152 N.E. 495.
>
> The gravamen of the charge of possession under Section 83—2 [Ill. Rev. Stat. 1971, ch. 38] is possession of a revolver and the finding of guilty of possession of ammunition constituted a fatal variance. The judgment of conviction of the offense of unlawful possession of ammunition is reversed."

In the instant case, the complaint charged that defendant committed an act of prostitution by *agreeing* to perform an act of deviate sexual conduct for money. At trial, Officer Murcia was the only witness who appeared for the State, and his testimony, if accepted at face value, clearly establishes that the defendant only *offered* to perform an act of deviate sexual conduct for money. Here, as in *Priest*, the evidence presented does not support a finding of guilty as to the charge in the complaint, and therefore resulted in a fatal variance.

■■ The State also argues that because no objection was made to the variance in the trial court, the defendant has waived that issue for purposes of appeal. While the waiver principle controls in instances of negligible variances between a charge and the proofs adduced, we do not deem it applicable to the instant case in which there was a complete absence of evidence concerning a material element of the offense

42

charged. (*People v. Smith* (1974), 18 Ill.App.3d 851, 310 N.E.2d 796.) The allegation that defendant "agreed" was a material element of the charge which was not established. Essential elements of the charge must be proved without variance. *People v. Mosby* (1962), 25 Ill.2d 400, 403, 185 N.E.2d 152.

For the reasons stated, the judgment of conviction is reversed.

Reversed.

McGLOON, P. J., and DEMPSEY, J., concur.